## Reed, Appellant, *v.* Cassatt.

*Contract—Promissory note—Collateral agreement—Interest.*

Defendant executed a promissory note whereby he agreed to pay plaintiff " the sum of seven thousand dollars, with interest, on the 24th day of July, 1877, subject to agreements dated July 24, and August 8, 1872, interest payable semi-annually." The collateral agreements referred to in the note provided that in case the note should not be paid at maturity plaintiff should look to certain securities alone for payment of the note, and he expressly waived all right to proceed at law, or otherwise, against any other property of defendant. *Held*, that plaintiff could not sustain an action to recover interest on the note, as, under the agreement, no personal liability attached to the maker for the payment of either principal or interest.

In this case there was no distinction between the interest accruing every six months and interest accruing during the whole period. If the obligee did not collect his semiannual payments, they simply remained unpaid, and were a constituent part of the entire sum of principal and interest due at the maturity of the paper. As such, the interest was simply a part of the gross sum due, and was to be collected in the same way as the principal.

Argued Jan. 16, 1893. Appeal, No. 58, July T., 1892, by plaintiff, George K. Reed, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1890, No. 555, on verdict for defendant, A. J. Cassatt. Before Paxson, C. J., Sterrett, Green, Williams, McCollum, Mitchell and Dean, JJ.

Assumpsit to recover semiannual interest accrued on sealed note before maturity.

The note sued upon was as follows :

" I promise to pay George K. Reed, of the city of Lancaster, state of Pennsylvania, the sum of seven thousand dollars, with interest, on the twenty-fourth day of July, A. D. 1877, subject to agreements dated July 24th and August 8th, 1872, interest payable semi-annually."

" Witnesses :

" The words 'subject to agreements dated July 24th and August 8, 1872,' being first interlined.

" C. E. Morgan, Jr."

" A. J. Cassatt.  [seal]

" Philadelphia, August 8, 1872."

The first semiannual interest was paid and indorsed on the note.

The agreement of July 24th, after reciting the proposed formation of the Lancaster Manufacturing Co., by defendant and others, and the purchase from plaintiff of the Norris Locomotive Works, provided that in payment of the Norris Locomotive Works, the corporation therein referred to should " give Reed its bond for $20,000, . . . . and shall assign and transfer unto the said Reed twenty-one hundred shares of its capital stock, . . . . and that immediately upon the transfer . . . . he will transfer and assign unto each of the [individuals] four hundred and twenty shares of said capital stock, he Reed thereupon receiving from each of said parties his individual note, under seal and not negotiable, for $14,000, payable with interest, one half within three and the other half in five years from the date hereof, the same to be secured by capital stock of said corporation to the amount of $21,000, i. e., four hundred and twenty shares of the same; said stock to be held by said Reed in the name of the owner thereof with a blank power of attorney, and not to be transferred unless the note secured thereby should remain unpaid after the same shall become due and payable, and it is expressly provided that in case the said note or any of them should not be paid at maturity, the said George K. Reed shall look to said security alone for payment of the same, and he expressly waives all right to proceed at law or otherwise against any other property."

The court charged as follows, by GORDON, J.:

" This case, as you have seen, is covered by documentary evidence, and it is a rule of law that all such evidence is for the court to construe. The notes given by the defendant were given after an agreement had been executed by all of the parties, providing that if any default was made in the payment of these notes the payee should only have recourse or satisfaction to the stock which was assigned as collateral security; that in no event would he have recourse to the defendant personally, or out of any other property or thing; that being so, it controls the whole subject-matter of the notes, and hence I instruct you that you should find a verdict for the defendant."

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* was above charge, quoting it.

*David W. Sellers*, for appellant.—The corporation formed by these individuals had in præsenti the property of the payee, and it was commercially sensible that, while the payment of principal could be deferred, the interest should be paid as it accrued before maturity. The interlineation was a short method to conform the debt represented by the note to usual obligations in which interest is treated separately from principal during the progress towards maturity : Bank v. Chester, 11 Pa. 282; Moyer v. Garrett, 96 Pa. 376.

*John G. Johnson*, for appellee.—If any new idea was meant to be conveyed by the insertion of the words " interest payable semi-annually," it was subordinated to the original idea that such payment should be " subject to agreements." If, at the time of the maturity of the principal, the security should not be sufficient to pay it, the appellant was to have no claim against the appellee, although the note promised that at maturity the latter would pay the former the designated amount. In like manner, if, at the maturity of the semiannual interest payment, there were no proceeds in the shape of dividends or otherwise out of which it could be paid, the appellant was without remedy against the appellee.

OPINION BY MR. JUSTICE GREEN, February 13, 1893 :

No question arises as to the legal propriety of the interlineation, and the addition to the original form of the obligation in question, and it must therefore be read as an entirety, and as all made at the time of execution. Read in this way, every kind of liability created by the instrument became subject to the operation of the agreements of July 24th, and August 8, 1872. The principal sum of the note was to be paid, with interest, on the 24th day of July, 1876. But this payment was to be subject to the two agreements mentioned. The entire principal and all the interest for the whole term of the obligation were, therefore, to be paid subject to the agreements. By the addition, " interest payable semi-annually," the times of payment of the interest were changed so that the interest was to be paid at intervals of six months, instead of at the maturity of the note, but that was the whole of the effect of the added words. The time, only, of the payment of interest was changed. The duty to pay interest was still the

same.   The interest was to be paid in either event, distinctively as interest, but in any event it was only interest, and the legal duty of the maker was payment only.

But the whole duty of payment under the contract of July 24, 1872, was qualified.   It was subject to the condition that if actual payment was not made, the obligee was to look only to the security of the stock which had been transferred to the obligor.   And the obligee expressly waived, " all right to proceed at law or otherwise against any other property or properties whatsoever of any description, belonging, or which may belong, to the maker of said note remaining unpaid, for the satisfaction of the same."   The plain meaning of this agreement undoubtedly is that whatever remained unpaid of the note at its maturity was to be collected exclusively out of the transferred stock. The obligee expressly waived all right to proceed against any other property " whatsoever " of the obligor, to enforce the payment of any money due under the obligation.   The waiver was co-extensive with every duty of payment arising from the instrument.   How could we possibly say otherwise when the contract of the parties does not say so?   There is no distinction in the agreement in this respect between interest accruing every six months and interest accruing during the whole period. If the obligee did not collect his semiannual payments, they simply remained unpaid, and were a constituent part of the entire sum of principal and interest due at the maturity of the paper.   As such, the interest was simply a part of the gross sum due, and was to be collected in the same way as the principal.   We are clearly of opinion that the case was correctly decided by the learned court below.

Judgment affirmed.