JESSE O. WELLS, Appellee, v. J. B. FLYNN et al., Appellants.

**VENDOR AND PURCHASER:** Contract for Nonpersonal Liability. A
buyer whose *personal* liability for the purchase price is limited
''strictly to the initial payment'' (the balance being represented
by incumbrance) may not be *personally* held for taxes and insurance
upon the property, or for interest on such secured balance.

*Appeal from Polk District Court.*—GEORGE A. WILSON, Judge.

SEPTEMBER 30, 1921.

THE opinion sufficiently states the facts. There was a decree for plaintiff, and the defendants appeal.—*Affirmed in part; reversed in part.*

*Sullivan & Sullivan,* for appellants.

*John G. Myerly,* for appellee.

WEAVER, J.—On April 14, 1914, plaintiff and the defendants Flynn and McDermott entered into a written contract, by the terms of which the latter agreed to purchase from the plaintiff "the name, business, contracts, and personal property of the L. J. Wells Livery & Automobile Company," together with certain described real estate in the city of Des Moines, Iowa, for the actual consideration of $80,000; though, by agreement and consent of the parties, the expressed or nominal consideration was $100,000. The purchase price was to be paid in installments: $20,000 on the signing of the agreement; $10,000 on or before July 1, 1917; $10,000 on or before July 1, 1919; and $5,000 on or before July 1st of each year thereafter, until the full consideration was paid.

By the terms of the contract, it was further agreed that, "should the parties become involved in litigation over the agreement, or the enforcement of the lien thereof the district court of Polk County, on filing of a petition in foreclosure proceedings, should appoint a receiver to take charge of the property and business and to hold possession of the same until the litigation be completed or until the unpaid balances with interest are fully paid, and all rents and profits derived from said business, personal property and real estate, less costs and expenses of receivership shall be applied on the unpaid balances" secured thereby. This provision of the contract is accompanied by the following clause, upon the proper construction and effect of which this controversy principally turns:

"It is also agreed that the taking of possession under such receivership shall in no manner prevent or retard the party of the first part in the collection of said unpaid balances by foreclosure or otherwise, it being expressly understood and agreed that the personal liability of the parties of the second part here-

under, is strictly limited to the payment of forty thousand and no/100 dollars ($40,000) on the execution of this contract, and party of the first part must look to the name, business, personal property, accounts and real estate herein described for his security for the unpaid .balances amounting to sixty thousand and no/100 dollars ($60,000).''

On March 26, 1916, the plaintiff instituted this action in equity, alleging defendants' default in payments accruing upon the contract, asking the appointment of a receiver, demanding personal judgment against the defendants and the foreclosure of the defendants' equity of redemption, and for general equitable relief. No receiver was, in fact, appointed; but plaintiff appears to have entered into and thereafter held possession of both property and business.

Answering the petition, defendants took issue upon some of the alleged claims of the plaintiff, and further specifically pleaded the provision above quoted from the contract, with reference to their personal liability, and denied plaintiff's right to recovery of a personal judgment against them or either of them. They further allege that it was the express understanding and agreement of the parties that defendants should be chargeable with no personal liability beyond the initial payment, and that, for any default in payment of the remainder of the agreed purchase price, the plaintiff would look only to the security afforded by his lien upon the property; and they ask that, in case the court should hold that such meaning and intent are not fully expressed in the writing, the instrument then be reformed accordingly.

The trial court, having heard the evidence and considered the various items in dispute, found due to the plaintiff an unpaid remainder of $22,333.74 on the contract price of the property, established the same as a first lien on such property, and awarded a special execution for its collection. It was further found that, of the amount so adjudged due and unpaid, the defendants were personally liable for $3,498.22, and judgment was entered against them to that extent. The decree does not expressly disclose the items of indebtedness constituting the amount of the personal judgment; but an examination of the record makes it reasonably clear that it includes taxes accumulating on the property subse-

quent to the date of the contract, insurance premiums paid by the plaintiff, and interest accruing upon a mortgage indebtedness assumed as part of the purchase price of the property.

There was more or less controversy over the actual remainder left unpaid, after giving defendants the benefit of all proper items of credit, it being the position of the defendants that the amount did not exceed about $11,000. We shall not attempt to review the evidence upon this point, further than to say that, while some of the items are involved in considerable uncertainty and doubt, we are satisfied that the trial court's conclusion is substantially correct, and that the decree establishing the plaintiff's lien and ordering a foreclosure should be affirmed.

The more serious question is upon that feature of the decree which charges the defendants with personal liability for the sum of $3,498.22. The theory upon which the appellee relies in support of this finding is that the clause in the contract by which the personal liability of the defendants is "strictly limited" to the payment of the initial installment, and providing that the plaintiff "must look to the name, business, personal property, accounts, and real estate herein described for his security for the unpaid balances of $60,000," operates to relieve the defendants from personal liability for payment of the principal sum of $60,000, and nothing more; and that their default in payment of the interest on the mortgages, liens, insurance premiums, and taxes imposes a personal obligation, unaffected by the restrictive clause. And this, we conclude, was the thought of the trial court in framing its decree.

In our opinion, this construction of the contract cannot be sustained. That it is competent for the parties to a contract to agree that, for the payment of an indebtedness thereby created or assumed, the creditor shall look only to a designated security for his payment, and not to the personal liability of the debtor, is well settled. *Allison v. Hollembeak,* 138 Iowa 479; *Ball v. Wyeth,* 99 Mass. 338.

If a man contemplating a purchase of property of great value on deferred payments is unwilling to pledge his personal liability beyond a limited amount, and says to the seller, "I will take this property at the price you put upon it, provided that my personal liability be limited to the initial payment, and for the

remainder you must look only to your vendor's lien," and the seller consents to the condition, there is no good reason why the law should not recognize the validity of the agreement, or why the courts should not enforce it according to its terms. Such was the purchase in this case. Though it dealt with many and various items of property, it was a single purchase; and, when the defendants had discharged their personal liability by payment of the first installment, the contract in the plaintiff's hands was enforcible against the security alone. His claims subsequently arising for taxes, insurance, and interest are incidental to the preservation of such security, and may properly be added to the amount for which he may enforce such security; but there is no ground, legal or equitable, upon which it may be used to increase the limits of the personal liability of the purchaser, which has not only been definitely fixed, but has been, in fact, discharged by full payment. A case involving a somewhat similar principle is found in *Reed v. Cassatt,* 153 Pa. 156 (25 Atl. 1074). There, a promissory note was signed by the maker upon condition that, if default was made in its payment, the holder should look only to certain collateral securities for its collection. The note was not paid at maturity; and, certain interest having accrued thereon, the holder, conceiving the idea that the limitation upon the maker's personal liability affected nothing but the principal debt, sued to collect the interest. In denying such recovery, the court said:

"If the obligee did not collect his semiannual payments, they simply remained unpaid, and were a constituent part of the entire sum of principal and interest due at the maturity of the paper. As such, the interest was simply a part of the gross sum due, and was to be collected in the same way as the principal."

So, also, in *Johnson v. Payne,* 11 Neb. 269 (9 N. W. 81), speaking of a claim by a mortgagee for taxes paid on the mortgaged property, it is said that:

"Whatever amount is due under the mortgage at the time of its foreclosure [including taxes so paid] constitutes but a single and indivisible demand, and cannot be separated and collected by several actions."

And in Massachusetts, it has also been held that there may

be a mortgage without personal liability on part of the mortgagor, and that an agreement for the extinguishment of such personal liability is not destructive of the character of the transaction as a mortgage. *Cook v. Johnson,* 165 Mass. 245 (43 N. E. 96).

Appellee argues that the closing words of the clause in the contract which speaks of the unpaid balances of $60,000 indicate clearly that it was only as to such principal that personal liability was waived; but the point is not well taken. At the time when the contract was made and the initial installment paid, $60,000 was the total "unpaid balance" on the purchase price. Had defendants then and there paid the $60,000, plaintiff's interest or lien would have been entirely extinguished. In that situation, the plaintiff's agreement to waive the personal liability of defendants for the entire amount unpaid, and to look only to the security, left the latter exposed to no financial hazard under the contract, except such as might result from plaintiff's enforcement of his security.

Our attention is also directed to another clause of the contract, which provides that, upon default made by the defendants in the performance of the agreement, the plaintiff was authorized to bring an action at law to recover the amount due, or at his option could proceed by action in equity to foreclose the contract. This right given to plaintiff to sue at law is thought to be an admission of personal liability; but such conceded right to so sue and recover at law is carefully guarded by adding thereto the words, "but only to the extent to which the secured parties are personally liable under this contract." Instead of being an admission by the defendants against their interest, this repeated restriction of liability serves to strengthen the defendants' contention as to the mutual understanding of the parties.

Without further discussion, we think that the decree below, in so far as it sustains the plaintiff's claim for personal recovery from the defendants, must be reversed, and that the relief granted to plaintiff must be limited to the foreclosure of his lien for the sum found his due. Special execution for that purpose may issue, but the award of general execution against the property of appellants is set aside.—*Affirmed in part; reversed in part.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.