GEORGE W. SAULSBERRY, *Appellant*, v. M. R. WOOD
*et al., Respondents.*[1]

*H. E. Foster,* for appellant.

*W. H. Thompson,* for respondents.

MILLARD, J.—On November 16, 1932, defendants, a marital community, executed a promissory note whereby they agreed to pay to the order of plaintiff, on or before five years after date, the sum of $11,870, with interest thereon at the rate of six per centum per annum from November 16, 1933. Subsequently, the makers of the note agreed to pay the interest semi-annually, commencing February 16, 1933. The makers signed an addenda to the note providing that interest "shall begin February 15, 1933, instead of November 16, 1933." The note, payment of which was secured by a mortgage on certain real estate in King county, provided that the plaintiff payee should look solely to the mortgaged property for payment of the note and mortgage. The makers of the note paid no part of the principal or interest. On December 11,

[1]Reported in 39 P. (2d) 592.

1933, the defendants conveyed to the plaintiff, by quitclaim deed, all interest they had in the real estate mortgaged to secure the payment of the note.

On the theory that the limitation upon the makers' personal liability affected nothing but the principal debt, plaintiff instituted this action to collect the accrued interest on the note. So far as material to this appeal, the allegations of the complaint are as follows:

"That on or about November 16th, 1932, for a full and valuable consideration the defendants made, executed and delivered to the plaintiff their certain paper writing in words and figures as follows, to-wit:

"NON-DEFICIENCY NOTE

"Seattle, Washington,

"$11,870.00                    November 16, 1932.

"On or before five years, after date, without grace, we promise to pay to the order of GEORGE W. SAULS-BERRY, ELEVEN THOUSAND EIGHT HUNDRED SEVENTY ($11,870) DOLLARS, with interest thereon, at the rate of six per cent. per annum from February 16th, 1933, until paid, for value received, interest to be paid semi-annually and if not so paid, the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note.

"In case suit or action is brought on this note, we agree in addition to the costs provided by statute to pay a reasonable attorney's fee.

"To secure this note there has been given a mortgage on certain real estate in King County, State of Washington, and in case suit or action is instituted to collect this note or foreclose said mortgage, said George W. Saulsberry hereby agrees to look solely to the property described in said mortgage for the satisfaction of this note and said mortgage. This note is given under the consideration that no deficiency judgment be entered against the undersigned.

"This note is given with mortgage on the following described real estate: All of blocks 1, 2, 3, and 4; Lots 1 to 15, inclusive, and lots 17 to 28 inclusive, block 5; Lots 1 to 12, inclusive, and Lots 17 to 28 inclusive, Block 6; all in Saulsberry Heights Addition to King

County, Washington, subject 'to easement for Skagit power pole line over the east part of blocks 1, 4 and 5, as shown of record; and in accepting this note, the holder agrees to pay Fifty ($50) Dollars on the 1932 taxes on the above described property. The holder of this note agrees to and will leave with the First National Bank of Seattle a power of attorney authorizing them to release from said mortgage any lots or lots upon payment of Seventy ($70) Dollars for each separate lot, excepting lots 1 and 2, block 1, which shall be released on the payment of Three Hundred ($300) Dollars each, for said last two named lots.

"M. R. Wood

"Georgie W. Wood.

2:45 p. m. November 17, 1933.

"I agree that interest shall begin on my non-deficiency note to George W. Saulsberry shall begin February 15, 1933, instead of November 16, 1933, as named in said note.                                    M. R. Wood.

"That pursuant to the terms, conditions and stipulations of said paper writing the amount named therein drew interest at the rate of 6% per annum, payable semi-annually, from and after February 15th, 1933. *That at the time of the execution of the note interest did not commence to run till November 16th, 1933, but by agreement in writing of the parties subsequently had as appears in the last five lines of paragraph II the interest bearing date was changed to February 16, 1933, and that defendants orally agreed to pay the' interest accruing every six months thereafter in cash to plaintiff until note was paid.* That on November 16th, 1933, there was due and payable the semi-annual interest on said amount named in the sum of Three Hundred Fifty-six and 10/100 ($356.10) Dollars which the defendants failed and neglected to pay. That on the 11th day of December, 1933, the defendants by deed of quitclaim conveyed all interest the defendants had in the real estate referred to in said paper writing to the plaintiff herein but neglected and refused to pay the interest due on December 11, 1933, amounting to Four Hundred Six and 10/100 ($406.10) Dollars.

"There is due the plaintiff from the defendants by reason of the premises herein the sum of Four Hun-

dred Six and 10/100 ($406.10) Dollars together with interest on the same at 6% from December 11th, 1933, and that no part of the same has been paid.''

The appeal is from the judgment of dismissal rendered upon the plaintiff's refusal to plead further, after a demurrer had been sustained to his complaint.

Counsel for appellant does not question the validity of the stipulation in the note that the payee shall look to the property alone for payment of the note and mortgage, and that there shall be no personal liability on the part of the makers of the note. It is appellant's theory that the limitation upon the makers' personal liability affected nothing but the principal debt; that the promises to pay interest and to pay the principal are severable, and that an action may be maintained upon the express promise to pay interest without including it in the principal debt. Counsel for appellant argues:

''It seems clear from the note and the *addenda* that the parties agreed to pay interest whether anything was paid upon the note or not. The note runs for a period of five years and was given for the purchase price of the premises in the note described, and the makers of the note held the premises described, made sales and other transactions and on the 11th of December, 1933, conveyed the premises to the appellant by deed of quit-claim. The third paragraph of the note provides that no deficiency judgment shall be entered in satisfaction of the note or mortgage, but there is no provision in the note that the parties can refuse to pay the interest. Appellant contends that the note is one contract and the interest another; that the parties can be compelled to pay this interest, at the interest-paying periods—twice each year. Appellant contends this is elementary, and that the appellant is entitled to a judgment for the unpaid interest due at the time the premises were surrendered.''

The parties expressly agreed—they wrote the

stipulation in the note evidencing the debt—that the mortgagee should look to the mortgaged property alone for payment of the debt. Concededly, the express agreement that appellant mortgagee, who is payee of the note secured by the mortgage, should look to the mortgaged property alone for payment of the debt, is valid.

We are not unfamiliar with the rule that,

" . . . where the interest is provided for by contract and is due and payable, it constitutes a specific claim for which an independent action may be brought." 33 C. J. 254, § 177.

It should be borne in mind, however, that the interest payable by virtue of the contract of the parties "is an integral part of the debt, as much so as the principal debt itself." 33 C. J. 254, § 176.

"Conventional interest in the ordinary acceptation of the term is such interest as the parties to a contract have agreed upon as a part of their contract, and is as much an integral part of the debt as the principal itself, and while it forms an element in computing the amount of recovery, it does so in the same way that a provision of the contract limiting liability, or any other contractual provision as to the amount involved in the contract, does." 15 R. C. L. 3.

That is, the restrictive provision as to the personal liability of the respondents was not limited to the principal debt of $11,870, but included within the limitation was the interest, which was an essential part of the whole debt, a part of the gross sum payable under the terms of the contract of the parties.

An apposite authority is *Reed v. Cassatt*, 153 Pa. 156, 25 Atl. 1074. In that case, the defendant executed a promissory note whereby he agreed to pay to the plaintiff

" . . . the sum of seven thousand dollars, with interest, on the twenty-fourth day of July, A. D. 1877,

subject to agreements dated July 24th and August 8th, 1872, interest payable semi-annually.''

The collateral agreements referred to in the note provided that, in case the note should not be paid at maturity, the plaintiff should look alone to certain collateral securities for its collection. The first semi-annual interest was paid and indorsed on the note. The note was not paid at maturity, and certain interest having accrued thereon, the holder, conceiving the idea that the limitation upon the maker's personal liability affected nothing but the principal debt, sued to collect the interest. In denying recovery, the court referred to the interlineation in the note of the words ''subject to agreements dated July 24th and August 8th, 1872,'' and said:

''No question arises as to the legal propriety of the interlineation, and the addition to the original form of the obligation in question, and it must therefore be read as an entirety, and as all made at the time of execution. Read in this way, every kind of liability created by the instrument became subject to the operation of the agreements of July 24th, and August 8, 1872. The principal sum of the note was to be paid, with interest, on the 24th day of July, 1876. But this payment was to be subject to the two agreements mentioned. The entire principal and all the interest for the whole term of the obligation were, therefore, to be paid subject to the agreements. By the addition, 'interest payable semi-annually,' the times of payment of the interest were changed so that the interest was to be paid at intervals of six months, instead of at the maturity of the note, but that was the whole of the effect of the added words. The time, only, of the payment of interest was changed. The duty to pay interest was still the same. The interest was to be paid in either event, distinctively as interest, but in any event it was only interest, and the legal duty of the maker was payment only.

''But the whole duty of payment under the contract of July 24, 1872, was qualified. It was subject to the

condition that if actual payment was not made, the obligee was to look only to the security of the stock which had been transferred to the obligor. And the obligee expressly waived, 'all right to proceed at law or otherwise against any other property or properties whatsoever of any description, belonging, or which may belong, to the maker of said note remaining unpaid, for the satisfaction of the same.' The plain meaning of this agreement undoubtedly is that whatever remained unpaid of the note at its maturity was to be collected exclusively out of the transferred stock. The obligee expressly waived all right to proceed against any other property 'whatsoever' of the obligor, to enforce the payment of any money due under the obligation. The waiver was co-extensive with every duty of payment arising from the instrument. How could we possibly say otherwise when the contract of the parties does not say so? There is no distinction in the agreement in this respect between interest accruing every six months and interest accruing during the whole period. If the obligee did not collect his semiannual payments, they simply remained unpaid, and were a constituent part of the entire sum of principal and interest due at the maturity of the paper. As such, the interest was simply a part of the gross sum due, and was to be collected in the same way as the principal."

In *McKay v. Howard,* 6 Ont. Rep. 135, a mortgage was given to a named person on certain lands. The mortgage contained a provision that "the said lands only shall in any event be liable for the payment of the mortgage." The mortgage was assigned by the mortgagee to the defendant, who, on an installment of interest falling due, distrained for it. The court assumed the validity of the provision relieving the mortgagor from personal liability for payment of the mortgage debt. The court held, in view of the restrictive provision, that the payment of interest, as well as of the principal, could be enforced only against the property, and that a personal judgment could not be

recovered therefor. See, also, *Wells v. Flynn,* 191 Iowa 1322, 184 N. W. 389, 17 A. L. R. 710.

The judgment is affirmed.

BEALS, C. J., MAIN, GERAGHTY, and HOLCOMB, JJ., concur.